## BLACKHAWK QUARRY COMPANY OF FLORIDA, INC. v STATE OF FLORIDA, DEPARTMENT OF TRANSPORTATION
Case No. 87-0621R

State of Florida, Division of Administrative Hearings

June 26, 1987

### APPEARANCES OF COUNSEL

**Harold F. X. Purnell, Oertel** and **Hoffman, P.A.,** for petitioner.

**Larry D. Scott,** Department of Transportation, for respondent.

### OPINION

MARY CLARK, Hearing Officer.

### *FINAL ORDER*

Final hearing in the above-styled action was held in Tallahassee,

Florida on May 18, 1987, before Mary Clark, Hearing Officer of the Division of Administrative Hearings.

### Background and Procedural Matters

On February 18, 1987, Blackhawk filed its Petition to Determine the Invalidity of a Rule, pursuant to Section 120.56 F.S. At issue was Section 915 of the Florida Department of Transportation Standard Specifications for Road and Bridge Construction, as amended in October 1986. The hearing was immediately scheduled, but was continued at the request of both parties to allow time to pursue a settlement.

On April 27, 1987, Blackhawk moved to amend its petition to include a Section 120.56 F.S. challenge to the Florida Department of Transportation's Standard Operating Procedures for Evaluation, Approval and Control of Mineral Aggregate Sources: limerock, cemented coquina and shell base materials, as amended May 1986.

After a hearing, a motion was granted in an order dated May 13, 1987.

At the final hearing, Blackhawk presented the testimony of Larry Smith and Andrew Machata; FDOT presented the testimony of Juanita Moore, Robert Buser and William Wisner. Each party submitted six exhibits, all of which were received into evidence without objection.

Both parties have submitted proposed findings of fact and conclusions of law. Blackhawk has also submitted a memorandum of law. These documents have been carefully considered and many of the proposed findings of fact have been incorporated in this order. More specific rulings on each proposed finding of fact are found in the attached Appendix.

### Issues

1. Whether the following are "rules", as defined in Section 120.52(15) F.S., and, if so, are they valid as rules:

a) Section 915, FDOT Standard Specifications for Road and Bridge Construction, October 1986.

b) FDOT Standard Operating Procedure for Evaluation, Approval and Control of Mineral Aggregate Sources: Limerock, Cemented Coquina and Shell Base Materials, May 1986.

2. Whether Blackhawk has standing to seek the above determination.

### Findings of Fact

1. Blackhawk is the owner of a mine located in Palm Bay, Florida,

which, since 1982, has produced cemented coquina shell material for use as a base material in the building of roads.

2. FDOT is the state agency responsible for the construction and maintenance of state roads. FDOT approves sources of supply of road base materials, including cemented coquina shell, for use by contractors in the construction of FDOT road projects.

3. FDOT approval is intended to assure that the producer is capable of providing material in accordance with the standard specifications for that material. Approved source status is required for a producer to sell its material to a contractor for use on FDOT projects, or on non-FDOT projects (some cities and counties) which require that material be from an FDOT-approved source.

Approval may be obtained upon the producer's request, after inspection and evaluation performed by FDOT's Bureau of Mining and Materials in accordance with the Standard Operating Procedure for Evaluation, Approval and Control of Mineral Aggregate Sources ("SOP") and Section 915 of FDOT's Standard Specifications for Road and Bridge Construction ("Section 915").

4. Approval does not guarantee that the producer's material will be used by a contractor. Contractors bidding on FDOT projects are given options of base materials from which to choose. Once the base material is chosen, the contractor selects a producer from the FDOT approved source list.

A source's approval will expire if it has not furnished material for Department usage for a period of one calendar year; that period may be extended for one additional year upon the producer's written request.

5. Section 915 defines the composition of cemented coquina shell material, provides for approval of material sources in accordance with the SOP, provides that the material shall be free of specified deleterious substances and sets forth the physical and chemical properties of the material, including the requirement that, "the minimum percentage of carbonates of calcium and magnesium shall be 50." (Petitioner's exhibit #2)

Prior to amendment in 1986, Section 915 contained a provision granting the State Materials and Research Engineer the discretion to waive the requirement for minimum carbonates content if the material was determined to be equally suitable for its intended use. The 1986 amendment removed the waiver provision.

The 50 percent minimum carbonate content provision has been in effect since 1969 or 1970.

6. Section 915 is less than two pages within a 786-page document ("the Blue Book") entitled FDOT Standard Specifications for Road and Bridge Construction, 1986 Edition. The October 1986 version of Section 915 is in a separate two-page supplement. The Blue Book covers a vast array of subjects relating to contracts, construction, and materials for roads and bridges. The specifications change to keep up with developments in technology. The changes are placed in packets of supplemental provisions, like the current version of Section 915, and those provisions are eventually printed in a new edition of the "Blue Book".

The standard specifications are incorporated into all FDOT road and bridge construction contracts, along with relevant supplements, and with "special provisions" which address the unique requirements of the project under contract.

7. The SOP is a 28-page document which (in its words) ". . . establishes the Florida Department of Transportation's policy of accepting Limerock, Cemented Coquina and Shell Base materials produced for Department use through a producer Quality Control (QC) Program . . . [and] . . . provides the producer with information related to the methods and levels of source approval, the minimum requirements for QC programs and approval, and the criteria by which the Department will maintain that approval. . . ." (Petitioner's Exhibit #3, SOP, p. 1)

8. Neither Section 915 nor the SOP have been adopted as rules pursuant to the requirements of Section 120.54, F.S.

9. Blackhawk was an FDOT approved source of cemented coquina shell material in 1983 and 1984. The mine was given conditional approval in January 1985, for six months. The conditional approval expired in July 1985, and approval was suspended for failure to meet the carbonates requirement of Section 915. Blackhawk was not granted a waiver.

While it was approved, Blackhawk provided material for two FDOT projects and for several other projects that required FDOT approval. Approximately one-third of its projects had a requirement that the rock come from a DOT-certified source. Blackhawk lost an on-going contract on a county road project as a result of FDOT's suspension of its approval. Blackhawk continues in business, selling its material to sources which do not require FDOT approval.

Blackhawk's President, Andrew Machata, has met with various individuals at FDOT regarding its status and Section 915 and the SOP. Initially, he was told that he had no administrative remedies, as FDOT

176

personnel does not consider the process as subject to the Administrative Procedures Act. There is now pending a Section 120.57(1) F.S. proceeding related to Blackhawk's claim that it should be an approved source. (DOAH #85-4366)

10. FDOT has promulgated administrative rules governing the prequalification of contractors to bid on FDOT projects, Chapter 14-22 FAC, and rules of procedure governing contract bidding and bid protests, Chapter 14-25 FAC. FDOT grants administrative remedies in both the prequalification procedure and in the bidding and bid award procedures.

Blackhawk is not qualified to bid as a prime contractor of FDOT projects, nor is it seeking that qualification. It *is* seeking approval as a source of cemented coquina shell material, without which approval it cannot sell material to prime contractors for projects requiring FDOT approval.

*Conclusions of Law*

1. The Division of Administrative Hearings as jurisdiction over the subject matter and parties to this proceeding.

2. Subsection 120.56(1) F.S. provides

"Any person substantially affected by a rule may seek an administrative determination of the invalidity of the rule on the ground that the rule is an invalid exercise of delegated legislative authority."

Blackhawk has demonstrated that it is substantially affected by Section 915 and the SOP. "A party may demonstrate standing by showing that a rule has a real and immediate effect upon his case, as well as by proving injury in fact." *Professional Firefighters of Florida, Inc. v. DHRS,* 396 So.2d 1194, 1195-6 (Fla 1st DCA 1981)

The 50 percent carbonate requirement in Section 915 and the procedures in the SOP applying that requirement have been relied upon by FDOT in its denial of source approval to Blackhawk, thereby preventing the producer from making his product available to FDOT project contractors.

Blackhawk's situation is similar to the appellee in *Department of Administration, Division of Personnel v. Harvey,* 356 So.2d 323 (Fla. 1st DCA 1977). Ms. Harvey challenged certain training and experience requirements of the Department of Administration. Unless she could meet those requirements or demonstrate equivalent training and experience, she would not be eligible for employment by a state agency in any of the thirty job classifications in which she expressed an interest.

**177**

*Harvey,* supra, p. 325. There, as in this case, the meeting of requirements would not guarantee the job. However, failure to meet the alleged requirements did guarantee that she could not get a job, and that interest was sufficient to confer standing to challenge the requirements.

FDOT argues that since Blackhawk was not given a waiver in the past, the October 1986 version of Section 915, which removed the waiver provision, has no effect. Both the pre-1986 version of Section 915 and the more recent version contain the provisions regarding percentage of carbonate content of cemented coquina. It is that provision which FDOT claims Blackhawk has not met. With or without the waiver provision, Blackhawk is substantially affected by Section 915 and the SOP since the waiver required a determination of equal suitability to the 50 percent carbonate minimum (See Finding of Fact #5)

3. Subsection 120.52(15), F.S. defines "rule" as

". . . each agency statement of general applicability that implements, interprets, or prescribes law or policy or describes the organization, procedure, or practice requirements of an agency. . . ."

There are also defined exceptions but none is applicable, nor does FDOT argue that the challenged documents fall within an exception.

Both Section 915 and the SOP are clearly within this definition. Both prescribe and implement law and policy and apply generally to any producer who seeks source approval. These documents are virtually self-executing and are ". . . intended by their own effect to create rights, or to require compliance, or otherwise to have the direct and consistent effect of law." *Florida State University v. Dann,* 400 So.2d 1304 (Fla. 1st DCA 1981), citing *McDonald v. Department of Banking and Finance,* 346 So.2d 569, 581 (Fla. 1st DCA 1977).

FDOT argues that Section 915 is a contract term, negotiable by the parties and subject to modification and supplementation in any future contract. This is true, however, only as the provision relates to prime contractors. Those persons have certain clearly defined, FDOT-sanctioned, APA remedies: Subsection 120.53(5), F.S. and FDOT Rule Chapters 14-22 F.A.C. and 14-25 F.A.C. In those cases, Section 915 is similar to the wage rate determinations found not to be rules in *Florida Department of Commerce v. Matthews,* 358 SO.2d 256 (Fla. 1st DCA 1978).

As Section 915 is applied to producers of cemented coquina shell,

the requirements are neither ephemeral nor negotiable. Their product complies or it doesn't; if it doesn't, they are barred from the list of approved sources.

4. Section 915 and the SOP are "rules", but have not been promulgated as such in accordance with the procedures provided in Section 120.54 F.S. They are, therefore, invalid as rules. *Harvey,* supra; *State Department of Administration v. Stevens,* 344 So.2d 290 (Fla. 1st DCA 1977).

Based on the foregoing, it is hereby,

ORDERED:

1. Section 915, FDOT Standard Specifications for Road and Bridge Construction, October 1986; and Standard Operating Procedure Evaluation Approval and Control of Mineral Aggregate Sources —Limerock, Cemented Coquina and Shell Base Materials, May 1986, are invalid as rules.

2. Petitioner, Blackhawk Quarry Company of Florida, Inc. has standing in this proceeding.

DONE and ORDERED this 26th day of June, 1987 in Tallahassee, Florida.